# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### BIG STONE GAP DIVISION

| | |
|---|---|
| **JAY D. ROUSE,** | ) |
| Plaintiff, | ) Case No. 2:08CV00019 |
| v. | ) **OPINION** |
| **MICHAEL J. ASTRUE,** | ) By: James P. Jones |
| **COMMISSIONER OF** | ) Chief United States District Judge |
| **SOCIAL SECURITY,** | ) |
| Defendant. | ) |

*Lewey K. Lee, Lee & Phipps, P.C., Wise, Virginia, for Plaintiff; Taryn Jasner, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, Philadelphia, Pennsylvania, for Defendant.*

In this social security case, I affirm the final decision of the Commissioner.

I

Jay Rouse filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") denying his claims for disability insurance benefits ("DIB") pursuant to Title II of the Social Security Act ("Act"), 42 U.S.C.A. §§ 401-433 (West 2003 & Supp. 2009). Jurisdiction of this court exists pursuant to 42 U.S.C.A. § 405(g).

My review under the Act is limited to a determination as to whether there is substantial evidence to support the Commissioner's final decision. If substantial evidence exists, the court's "inquiry must terminate," and the final decision of the Commissioner must be affirmed. *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotes omitted). It is not the role of this court to substitute its judgment for that of the Commissioner, as long as substantial evidence provides a basis for the Commissioner's decisions. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

The plaintiff protectively filed for DIB on May 24, 2006, alleging disability beginning October 3, 2000, due to a back injury and high blood pressure. (R. at 47, 56.) This claim was denied initially on May 30, 2006 (R. at 15, 34-36), and upon reconsideration on August 6, 2006. (R. at 15, 44-46.) At his request, the plaintiff received a hearing before an administrative law judge ("ALJ") on March 7, 2007. (R. at 391.) At that time, a vocational expert and the plaintiff, who was represented by counsel, testified. (*Id*.) By decision dated March 23, 2007, the ALJ denied the plaintiff's claim for DIB. (R. at 15-26.)

The plaintiff filed a request for review of the ALJ's decision with the Social Security Administration's Appeals Council ("Appeals Council"), but was denied on March 7, 2008. (R. at 5.) Thus, the ALJ's opinion dated March 23, 2007, constituted the final decision of the Commissioner. The plaintiff then filed his Complaint with this court on May 1, 2008, objecting to the final decision of the Commissioner.

The parties have filed cross motions for summary judgment and have briefed the issues.[1] The case is now ripe for decision.

II

The summary judgment record reveals the following facts. The plaintiff was forty-eight years old on the date he was last insured, making him a younger individual under the Commissioner's Regulations. *See* 20 C.F.R. § 404.1563(c) (2008). He has a twelfth grade education. He worked as a sampler for a coal mine plant, but has not engaged in substantial gainful activity since October 3, 2000. He claims disability based on a back disorder with chronic low back pain, anxiety, and depression. (R. at 57, 63.)

---

[1] Although the plaintiff has requested oral argument, I find that the materials before the court are adequate for a decision without it.

On October 3, 2000, the plaintiff injured his back while at work lifting a trash can that was half full of coal. The plaintiff immediately experienced back pain and went to see Vincent Stravino, M.D., the following day. Dr. Stravino prescribed medication for the plaintiff's back and the plaintiff returned to work the following day. After returning to work for only two days, the plaintiff was taken off work because of continued lower back pain. He received Workers' Compensation benefits and medical benefits during his incapacity. (R. at 89-91, 280.)

Kelly J. Cassedy, M.D., reviewed images of the plaintiff's lumbar spine taken on November 9, 2000. Dr. Cassedy found a severe disc degeneration at the L5-S1 region with a minor disc bulge at that level. The remainder of the lumbar spaces were found to be normal and there was a significant facet osteoarthritis at the lumbosacral junction. (R. at 92-93.)

The plaintiff was referred to James Brasfield, M.D., by Bridget Hall, Medical Case Manager with the Professional Rehabiliation Network. While examining the plaintiff on November 16, 2000, Dr. Brasfield noted chronic lumbar spondylosis and an increase in lumbar pain, but found no evidence of a neurological abnormality. A mild to moderate disc space narrowing at the L5 region was also found in X rays taken on November 9, 2000. Robaxin and DayPro were prescribed, and the plaintiff was told to try walking each day. (R. at 95-96.)

On November 30, 2000, the plaintiff returned to see Dr. Brasfield stating that his back felt better but there was still some pain. Dr. Brasfield again noted chronic lumbar spondylosis, no evidence of acute neurological deficit, and mild to moderate obesity. The plaintiff was released to full-time work without restrictions. Dr. Brasfield found that the plaintiff did not have any neurological deficit as a result of his work injury, and therefore had no permanent partial impairment related to that injury. Dr. Brasfield also noted that the plaintiff had reached maximum medical improvement. Lortab was prescribed and the plaintiff was told to continue walking and to lose weight. (R. at 94.)

In March 2001, the plaintiff went to Kentucky Physical Therapy for a two-day functional capacity evaluation. Rouse demonstrated good bilateral upper extremity range of motion and strength, excellent grip strength and fine motor coordination, and a cardiovascular system within normal limits. The plaintiff also demonstrated a medium physical demand level of work with limitations present in lumbar range of motion and strength. He showed limited ability to walk on un-level terrain, to stand for long periods of time, and to complete pushing and pulling activities. The plaintiff had no ability to complete tasks in a forward bent position in sitting and standing and could not perform elevated work for an extended amount of time. (R. at 229.)

Records from Kentucky Physical Therapy also state that on January 4, 2001, the plaintiff said that his back was feeling better. (R. at 277.) The therapist noted that a range of motion of the lumbar spine had increased. (*Id.*) The plaintiff was discharged to a wellness maintenance program, since he had met maximum beneficial results with physical therapy. (R. at 239.)

The plaintiff received additional appointments for his low back pain at Blue Ridge Neuroscience Center from December 2000 to July 2005. On January 22, 2001, the plaintiff was seen by Ken Smith, M.D., an orthopedics specialist, who performed an initial consultation on Rouse's lower back. Dr. Smith found no immediate indication for additional diagnostic studies. Dr. Smith believed the plaintiff could return to work with a thirty pound lifting restriction for half-days and allowed him to continue the full course of physical therapy. (R. at 141.) The plaintiff returned on May 29, 2001, and Dr. Smith confined him to return to medium duty employment with a lifting restriction of thirty pounds. (R. at 133.) On July 7, 2005, the plaintiff returned and was seen by Neil Barry, M.D., an internal medicine specialist, who followed up and also reviewed the plaintiff's recent functional capacity evaluation. Dr. Barry believed the plaintiff could return to light duty employment as outlined in the Dictionary of Occupational Titles. (R. at 127.)

From March 2003 until January 2007, the plaintiff saw Dr. Barry, who provided checkups and medication refills. (R. at 143-226, 286-98, 300-50.) Dr. Barry's office compiled checklists with comments noting complaints of back pain and refills for medications, including Valium, Duragesic, and Lorcet. Dr. Barry noted that the plaintiff's back pain was controlled. (R. at 224.) Because the plaintiff was on certain medications, Dr. Barry restricted him from driving. (R. at 183.) The plaintiff was again seen by Dr. Barry on November 3, 2004. He was limited to less than sedentary work. (R. at 196.) On October 10, 2005, Dr. Barry noted that the plaintiff could not sustain work activity on a regular and consistent basis. In December 2005, the plaintiff was prescribed Depo-testosterone, Duragesic, Lorcetplu, Ibuprofen, Lotrel, Nexium, Amitril, and Valium. (R. at 313.) The plaintiff returned to Dr. Barry on February 16, 2007, where he was found to be able to perform less than sedentary work. (R. at 352-54.)

An independent medical evaluation of the plaintiff was performed on February 17, 2004, by William M. Platt, M.D., and included a record review and medical examination. Dr. Platt found that the plaintiff performed at the medium physical demand level category during a functional capacity evaluation with only a thirty pound restriction. After reviewing a MRI done in September 2004, Dr. Platt stated that there was no evidence of a disc herniation, but that the MRI had revealed

significant disc degenerative changes at the L5-S1. (R. at 98.) After he was examined, Dr. Platt stated that the plaintiff had a 0% whole person impairment and was at maximum medical improvement. Dr. Platt agreed with the findings of the functional capacity evaluation and saw no need for further medical, rehabilitative, or surgical therapy. Weight loss and smoking cessation was recommended. (R. at 99.)

On June 28, 2005, a functional capacity evaluation was performed, in which the plaintiff displayed no palpable muscle spasms or guarding in the lumbar area of the hips. He displayed a 5/5 strength in all major muscle groups, and was able to heel and toe walk and stand without difficulty. The plaintiff was found to be capable of lifting up to twenty pounds occasionally and ten pounds frequently. (R. at 100-11.)

On March 26, 2003, the plaintiff was prescribed Xanax by Dr. Barry. (R. at 225.) Dr. Barry assessed the plaintiff with anxiety on July 17, 2003. (R. at 217.)

A consultative psychological evaluation and mental medical assessment of the plaintiff were performed at the request of the plaintiff's attorney by B. Wayne Lanthorn, Ph.D., on February 13, 2007. The plaintiff was diagnosed with low average intellectual functioning, pain disorder, anxiety disorder, and major depressive disorder. Dr. Lanthorn believed that the plaintiff had a good ability to understand, remember, and carry out detailed but not complex job instructions, and a fair ability to relate to co-workers and the public. (R. at 355, 356, 363.)

The ALJ determined that the plaintiff has the residual functional capacity to perform a limited range of light work. The ALJ described light work as lifting or carrying ten pounds frequently and twenty pounds occasionally; sitting, standing, and walking about six hours, each in an eight hour day with the option to alternate positions throughout the day more often than during scheduled breaks; occasionally balance, kneel, stoop, crouch, crawl, and bend but never climb; and should have no exposure to hazards or machinery. No visual, communicative, or manipulative limitations were found. The ALJ determined that due to his mild reduction in concentration, the plaintiff was limited to simple, non-complex tasks but could interact adequately with supervisors, co-workers, and the public, and could maintain a normal work schedule. (R. at 21.)

The vocational expert testified that an individual like the plaintiff could perform the requirements of unskilled light exertion jobs such as a food preparer, crossing guard, houseman, non-farm-animal care, cashier without stocking duties, and retail sales person. The vocational expert further noted that there were approximately 89,425 unskilled light exertion jobs that required only a limited education within a 150 mile radius of the plaintiff. There were 17,000 jobs within a 150 mile radius of the plaintiff that an individual with the plaintiff's age, education, work experience, and residual functional capacity could perform. (R. at 25.)

In light of the evidence, the ALJ determined that the plaintiff was capable of making a successful adjustment to other work that existed in significant numbers in the national economy and was not disabled as defined in the Social Security Act. (R. at 25.)

### III

My review under the Act is limited to a determination as to whether there is substantial evidence to support the Commissioner's final decision. If substantial evidence exists, this court's "inquiry must terminate," and the final decision of the Commissioner must be affirmed. *Laws*, 368 F.2d at 642. Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Id.* It is the role of the ALJ to resolve evidentiary conflicts, including inconsistencies in the evidence. It is not the role of this court to substitute its judgment for that of the Commissioner, as long as substantial evidence provides a basis for the Commissioner's decisions. *See Hays*, 907 F.2d at 1456.

The plaintiff bears the burden of proving that he is under a disability. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). The plaintiff must show that his

"physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C.A. § 423(d)(2)(A).

The Commissioner applies a five-step sequential evaluation process in assessing DIB claims. The Commissioner considers whether the claimant: (1) has worked during the alleged period of disability; (2) has a severe impairment; (3) has a condition that meets or equals the severity of a listed impairment; (4) could return to his past relevant work; and if not, whether he (5) could perform other work present in the national economy. *See* 20 C.F.R. § 404.1520(a)(4) (2009). If it is determined at any point in the five-step analysis that the claimant is not disabled, then the inquiry immediately ceases. *See id.*; *Bowen v. Yuckert*, 482 U.S. 137, 141-42 (1987). The fourth and fifth steps in this inquiry require an assessment of the claimant's residual functional capacity ("RFC"), which is then compared with the physical and mental demands of the claimant's past relevant work and of other work present in the national economy. *See* 20 C.F.R. §§ 404.1560(b), (c) (2009).

The plaintiff argues that the ALJ's opinion is not supported by substantial evidence. Specifically, he argues that the ALJ erred by declining to give controlling weight to the opinions of Dr. Barry. Further, he contends that the ALJ erred by

failing to give full consideration to Dr. Lanthorn's findings concerning his mental impairments.

Dr. Barry opined that the plaintiff was unable to work. Even assuming that Dr. Barry qualifies as a treating physician, his opinion does not deserve controlling weight. The opinion of a treating physician controls only when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record . . . ." 20 C.F.R. § 404.1527(d)(2). Because other substantial evidence conflicts with the opinion of Dr. Barry, I find that the ALJ did not err in denying it controlling weight.

For example, after the plaintiff's injury, Dr. Brasfield released the plaintiff to full-time work without restrictions. Dr. Brasfield found that the plaintiff did not have a permanent partial impairment and that the plaintiff had reached maximum medical improvement. During a visit to Kentucky Physical Therapy, the plaintiff demonstrated a medium physical demand level of work with few limitations. Dr. Smith opined that with a thirty-pound lifting restriction, the plaintiff could return to work for half-days.

Additionally, after conducting a functional capacity evaluation and medical exam, Dr. Platt found that the plaintiff had performed at the medium physical demand level category with only a thirty pound restriction and stated that the plaintiff had

reached maximum medical improvement. In 2005, even Dr. Barry believed that the plaintiff could return to light work.

Accordingly, my review of the record finds substantial evidence to support the manner in which the ALJ considered the opinion of Dr. Barry.

I also find that the ALJ properly treated the opinion of Dr. Lanthorn. The ALJ gave Dr. Lanthorn's opinion little weight, which is consistent with the limited evidence of the plaintiff's mental impairments. The evidence includes only the plaintiff's allegations, Dr. Lanthorn's consultative evaluation, and a list of prescribed medications. The ALJ accounted for the plaintiff's low average intellectual functioning and reduced ability to concentrate by limiting the plaintiff to unskilled work. Thus, the ALJ did not err by giving little weight to Dr. Lanthorn's opinion.

Therefore, I find that substantial evidence supports the weight given to the opinion evidence by the ALJ.

IV

For the foregoing reasons, the plaintiff's Motion for Summary Judgment will be denied, and the Commissioner's Motion for Summary Judgment will be granted. An appropriate final judgment will be entered affirming the Commissioner's final decision denying benefits.

DATED: December 10, 2009

 /s/ James P. Jones
Chief United States District Judge